UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 1:21-cr-00034-CRC |
| | : | |
| THOMAS ROBERTSON | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS
MOTION TO REVOKE RELEASE ORDER**

The United States of America, by and through its undersigned attorneys, has asked the Court to revoke the terms of Defendant Thomas Robertson's pretrial release and detain him pending trial because he violated the conditions of his release by possessing firearms and committing new federal firearms offenses. In his opposition to the United States' motion, the Defendant argues, incorrectly, first that he did not possess any firearm or destructive device after February 25, 2021, and second that he did not violate 18 U.S.C. § 922(n) because he did not "ship or transport" firearms. As set forth below, and in the Government's motion, the Defendant possessed at least five firearms and a destructive device as late as June 29, 2021, and has been transporting and shipping firearms in interstate commerce throughout the duration of his pretrial release. Because the defendant has shown utter disregard for the Court's orders prohibiting his possession of firearms and other weapons, and because he has further flouted his release conditions by violating the federal firearms laws, there is no condition or combination of conditions that will reasonably assure the safety of the community. The Court should detain him pending trial.

**I. The Defendant Violated his Release Conditions by Possessing Firearms and a Destructive Device**

First, as noted in the United States' motion, during a lawfully authorized search of the

Defendant's residence on June 29, 2021, law enforcement discovered that the Defendant violated his release conditions by possessing a loaded M4 rifle, which was found in his bedroom, on a dresser as seen here:



The Defendant claims that the M4 rifle belongs to his son. ECF No. 31 at 3.  During the search of the Defendant's premises, law enforcement interviewed the Defendant's son, and invited him to collect his personnel effects.  The defendant's son agreed to do so, and gathered his belongings from a different room than that where the M4 rifle was located. As the search of the defendant's home commenced, one agent told the Defendant's son that if he had personal firearms stored in the house, he should tell the agent, because any firearms found in the house may be seized.  The Defendant's son responded, "yeah, my gun is in the truck.  I have a concealed carry

permit I can show you guys. It's in my room." The Defendant's son then took the agent to his bedroom, retrieved his wallet, and displayed his concealed carry permit.

After finding the M4 rifle in the Defendant's bedroom, law enforcement also asked the Defendant's son if the gun was his, and he declined to provide any information about it. In light of these facts, and because the M4 rifle was found in the Defendant's bedroom, with his personal effects, this Court may infer that it belongs to Defendant Robertson. *See, e.g., United States v. Littlejohn*, 489 F. 3d 1335 (D.C. Cir. 2007) (finding constructive possession of a firearm where it was found in the defendant's bedroom).

Second, law enforcement has now inventoried additional items seized from the Defendant's home, and discovered that the Defendant also possessed four silencers on June 29, 2021, which are by definition, firearms. *See* 18 U.S.C.§ 921(a)(3) ("The term "firearm" means … any firearm muffler or firearm silencer."). These silencers were registered to the Defendant as seen on related tax paperwork, two examples of which can be seen here:





Third, the Defendant argues that the partially assembled pipe-bomb discovered at his home was not a destructive device as defined by 26 U.S.C. § 5845(f), and that therefore he is permitted to possess it while on pretrial release. ECF No. 31 at 3. Title 26, United States Code, Section 5845(f) carves out from the definition of destructive device:

> "any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 7684(2), 7685, or 7686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes."

It does not, however, define what a destructive device is. That definition is found in 18 U.S.C. § 921(a)(4), which states:

> "The term "destructive device" means—(A) any explosive, incendiary, or poison gas—(i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses."

The pipe bomb at issue here meets this definition. The Defendant appears to argue that he was authorized to have this disassembled pipe bomb, because he was a trainer for a program called "ALERRT." The Government posits that he is referring to the Advanced Law Enforcement Rapid Response Training Program. Even accepting that the device found at the Defendant's home was originally designed for training purposes, he offers no explanation for why it falls into one of the carve-outs delineated in 26 U.S.C. § 5845(f), or why he continues to retain it following the Court's order to remove destructive devices from his premises.

**II. The Defendant Violated his Release Conditions by Committing a Federal Offense**

Title 18, United States Code, Section 922 sets forth several different firearms offenses. Subsection 922(n), makes it a crime for anyone under felony indictment to ship, transport, or receive firearms or ammunition in interstate or foreign commerce. The Defendant argues that he

did not violate this subsection because he did not personally "ship or transport" the items discussed in the Government's motion. ECF No. 31 at 4-5.  Although the D.C. Circuit has not specifically opined on what it means to "ship or transport" firearms for the purposes Subsection 922(n), the "ship or transport" language is used throughout 18 U.S.C. § 922. The Supreme Court has opined shipping and transporting firearms, as used in other sections within 18 U.S.C. § 922, includes causing their shipment or transport. *See Barrett v. United States*, 423 U.S. 212, 218–19 (1976) ("[Section] 922(g) prohibits the same categories of potentially irresponsible persons from shipping or transporting any firearm in interstate commerce or, see 18 U.S.C. s 2(b), causing it to be shipped interstate."); *Muscarello v. United States* 524 US 125 (1998) ("'Carry' implies personal agency and some degree of possession, whereas 'transport' does not have such a limited connotation and, in addition, implies the movement of goods in bulk over great distances."); *see also United States v. Smith*, 542 F.2d 711, 714–15 (7th Cir. 1976) (Upholding a conviction under § 922(a) where the "appellant did not physically place the weapon in the possession of the carrier which ultimately transported it to Chicago" but had requested the shipment of the baggage containing the weapons and "set the entire delivery process in motion.").  The defendant cannot absolve himself of criminal liability simply by arranging for another person to take steps that the law forbids him to take himself.  *See* 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.").

      Here, the Defendant caused the shipment and transportation in interstate commerce of at least 37 firearms, and a significant amount of ammunition. As detailed in the Government's motion, the Defendant used his email account, and least two websites (ar15.com, and gunbroker.com) to broker the sale of multiple firearms following his indictment on a felony

obstruction charge. On June 29, 2021, law enforcement interviewed the Federal Firearms Licensee (FFL) in Roanoke, Virginia to whom the Defendant shipped the firearms after purchasing them online. Law enforcement learned that as of June 29, 2021, the FFL had received 34 firearms on behalf of the Defendant, itemized as Exhibit A. An additional three firearms were received by the FFL between June 29, 2021, and July 1, 2021, for a total of 37. It is estimated that the Defendant spent approximately $50,000 from January 20, 2021, to July 2, 2021, on these firearms alone. Moreover, the FFL confirmed the Defendant possessed the firearms and handled them in the presence of the FFL during his pretrial release.

The Defendant's ammunition purchases, also prohibited under 18 U.S.C. §922(n), were equally voluminous. For example, from March 2021, through May 2021, on Gunbroker.com the Defendant purchased over 1,000 armor-piercing rounds. On a single day in February he ordered 46 M4 magazines, each capable of holding 30 rounds of ammunition. The following day, he ordered 100 M4 magazines, each capable of holding 30 rounds of ammunition. A representative sample of the ammunition purchased by the Defendant, and seized from his home, can be seen here:



### III. Conclusion

Because the defendant has ignored the Court's orders prohibiting his possession of firearms and other weapons during the time he has been on pre-trial release, and because he has further violated his release conditions through repeated violations of the federal firearms laws, the defendant presents a danger to the community that no release conditions will adequately mitigate. The Court should detain him pending trial.

                                          Respectfully submitted,

                                          CHANNING D. PHILLIPS
                                          Acting United States Attorney
                                          DC Bar No. 415793

By:    */s/Elizabeth Aloi*
          ELIZABETH ALOI
          Assistant United States Attorney

NY Bar No. 4457651
U.S. Attorney's Office, District of Columbia
555 Fourth Street, N.W.
Washington, DC  20530
Phone: (202) 695-0610
Elizabeth.aloi@usdoj.gov

*/s/  Risa Berkower*
RISA BERKOWER
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office, District of Columbia
555 Fourth Street, N.W.
Washington, DC  20530
Phone: (202) 803-1576
Risa.berkower@usdoj.gov

9