UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : **Crim. No. 1:21-cr-00034-CRC-2** |
| v. | : |
| | : |
| **JACOB FRACKER** | : |

**MOTION TO ADOPT AND JOIN MOTION
TO DISMISS COUNT ONE OF INDICTMENT
FILED BY CODEFENDANT**

Jacob Fracker, by and through undersigned counsel, respectfully moves this Court for the entry of an order granting Mr. Fracker leave to adopt and join Co-defendant Thomas Robertson's MOTION TO DISMISS COUNT ONE OF THE INDICTMENT, filed in Co-defendant Robertson's case on December 1, 2021, and attached hereto.

Defendant Fracker is charged by indictment with exactly the same charges as Co-defendant Robertson, and both men are substantially similarly situated. This would avoid duplication and should expedite matters for the Court.

WHEREFORE, for the foregoing reasons as well as any additional reasons deemed meritorious by the Court, counsel and Mr. Fracker request that the Court grant this motion and sign the attached order.

Respectfully submitted,

/s/
Bernard F. Crane, Esquire, DC Bar No. 386978
(Attorney for Defendant Fracker)
10521 Judicial Drive, Suite 105
Fairfax, Virginia 22030
Phone 202-429-2900
Email berncr@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2022 I electronically filed a copy of the foregoing with the Clerk of the Court using the Court's electronic filing system, and served a copy of the same by electronic mail to the following:

Elizabeth Aloi, Esquire, AUSA  elizabeth.aloi@usdoj.gov
Risa Berkower, Equire, AUSA  risa.berkower@usdoj.gov

Mark Rollins, Esquire (counsel for Co-defendant Robertson) mark@rollinsandchan.com

/s/
_____
Bernard F. Crane

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : **Crim. No. 1:21-cr-00034-CRC-2** |
| v. | : |
| | : |
| **JACOB FRACKER** | : |

## ORDER

Upon consideration of Defendant Jacob Fracker's **MOTION TO ADOPT AND JOIN MOTION FOR RELIEF FILED BY CODEFENDANT** and for good cause shown, it is this _____ day of January, 2022 hereby ORDERED that this motion should be and is hereby GRANTED.

_____
Christopher R. Cooper, US District Court Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States

v.

Thomas Robertson

Case Number:1:21-cr-00034-CRC

## DEFENDANT'S MOTION TO DISMISS COUNT ONE
## OF THE INDICTMENT

Defendant Thomas Robertson, by and through Undersigned counsel, pursuant to Fed. R. Crim. P Rules 7(c)(1) and 12(b)(3)(B), the Fifth and Sixth Amendments to the United States Constitution, and the authority discussed herein, moves this Court to enter an order dismissing Count One of the Indictment.

I.  **Introduction and Background**

Mr. Robertson is charged by Indictment for acts allegedly committed at the United States Capitol Building on January 6, 2021. He is charged with Four Counts. Counts two through four are misdemeanor offenses, specifically:

Count Two: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1)

Count Three: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)

Count Four: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D)

Mr. Robertson is charged with one felony.  The allegation in Count One for the felony offense of what the Indictment labels as "Obstruction of an Official Proceeding Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2," as erroneously charged. Section 1512, in actuality, titles the offense as

Page 1 of 15

"Tampering with a witness, victim, or an informant." Mr. Robertson request that this Court dismisses Count One based on the following arguments. It should be noted that the arguments in this motion are addressed before this Circuit in other January 6 cases[1].

## II. Count One is Insufficient Because it Fails to Specify the "Proceeding Before Congress" that Mr. Robertson Allegedly Obstructed

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Rule 12 provides that a defendant may also move to dismiss the Indictment for "failure to state an offense" and "lack of specificity." Fed. R. Crim. P.12(b)(3)(B)(iii),(v). The legal standards applicable to determining the sufficiency of an indictment are fully set out in United States v. Hillie, 227 F.Supp.3d 57 (D.D.C. 2017). As Judge Jackson recognized, the sufficiency of an indictment implicates "at least two core constitutional protections": (1) the Sixth Amendment's right of an individual accused of a crime "to be informed of the nature and cause of the accusation" and, (2) the Fifth Amendment's guarantee that a criminal defendant may only be prosecuted for offenses, the elements of which have been considered and found to exist by a grand jury such that the defendant may not be subject to multiple prosecutions for the same offense. Id. at 69–70 (citations omitted). Federal Rule of Criminal Procedure 7(c)(1) secures these

---

[1] *United States v. Grider*, 1:21-cr-22-CKK; *United States v. Caldwell and Crowl*, 1:21-cr-28-APM *United States v. Reffitt*, 1:21-cr-32-DLF; *United States v. Montgomery and Knowlton*, 1:21-cr-46-RDM; *United States v. Sandlin*, 1:21-cr-88-DLF; *United States v. Andries*, 1:21-cr-93; *United States v. Cua*, 1:21-cr-107-RDM; *United States v. Miller*, 1:21-cr-119-TJN; *United States v. Mostofsky*, 1:21-cr-138-JEB; *United States v. Nordean and Biggs*, 1:21-cr-175-TJK; *United States v. Costianes*, 1:21-cr-180-RJL; *United States v. Blair*, 1:21-cr-186-CRC; *United States v. Puma*, 1:21-cr-454-PLF; *United States v. Riley*, 1:21-cr-618-ABJ

constitutional rights by requiring that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged...." FED. R. CRIM. P. 7(c)(1).

As it relates to 18 U.S.C. § 1512(c) — the statute that Mr. Robertson allegedly violated as set out in Count One — the Court in *United States v. McGarrity*, 669 F.3d 1218 (11th Cir. 2012), held that an indictment for obstruction under that section is likewise insufficient when it fails to specify what "official proceeding" was allegedly obstructed. Id. at 123–40. In that case, the defendants were charged by Indictment with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c). Id. at 1239. The Indictment, however, did not specify what that official proceeding was. Id. The Court noted this was insufficient to "apprise [] the defendant[s] of what [charges they] must be prepared to meet" as the only notice was given was that the defendants "obstructed an unknown official proceeding at some time in someplace by some action." Id. (quoting *Russell*, 369 U.S. at 763).

Count One of the Indictment against Mr. Robertson suffers from the same problem present in *McGarrity*, merely repeating the language of the criminal statute allegedly violated, in this case, Section 1512(c)(2), and, like in *McGarrity*, failing to specify what "official proceeding," or more specifically, what "proceeding before Congress" was allegedly obstructed. Such information is necessary here.

The Supreme Court decision in *Russell v. United States*, 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962), is instructive here, as well. In *Russell*, the Court held that an indictment charging a defendant with refusing to answer questions before a congressional subcommittee was insufficient and affirmed its dismissal because the

Indictment failed to allege the subject of the congressional committee's inquiry an essential element of the offense. Id. at 754–55, 771–72. As the Court noted, "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." Id. at 764. The Court noted that, for the specific charged offense, in that case, a violation of 2 U.S.C. § 192 involving the refusal to answer questions before Congress, "the very core of criminality under [that statute] is pertinency to the subject under inquiry of the questions which the defendant refused to answer." Id. at 764. As the Court stated in *Russell*, "the very core of the criminality" that the statute proscribes depends on "a specific identification of fact," namely, what the "proceeding" was that Mr. Robertson allegedly obstructed. *Russell*, 369 U.S. at 764. In sum, without identifying what "official proceeding" was allegedly obstructed, no criminal charge in violation of Section 1512(c)(2) can be sustained. Section 1512(c)(2) does not proscribe the obstruction of any and every proceeding before Congress.

### III.  Count One is Also Insufficient Because The Electoral Count on January 6 is not an "Official Proceeding."

When considering the legislative history of 18 U.S.C. §1512 and Congress's role in counting the electoral votes pursuant to the 12th Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. §15, the electoral count is a ceremonial and administrative event that is not an "official proceeding" contemplated in §1512; it is not an adjudicative proceeding involving witness testimony and evidence. The Twelfth Amendment and the Electoral Count Act of 1887 place the responsibility on Congress to count electoral votes after the states have already heard any disputes and certified the vote. *Bush v. Gore*, 531 U.S.98, 154 (2000) (Breyer, J., dissenting). Members of

Congress may object, in writing, and without argument. 3 U.S.C. §15. According to the statute, there is no testimony, no witnesses, no argument, and evidence.

The purpose of the Electoral Count Act of 1887 was to resolve years of confusion as to what exactly Congress's role was in counting the electoral votes. The seven sections of the Act attempt to do five things:

(1)   Give the states enough time between election day and elector balloting day to settle controversies over the appointment of their presidential electors (Section 1);

(2)   Encourage the states to establish mechanisms for resolving contests over the appointment of presidential electors prior to the day of electoral balloting (Section 2);

(3)   Publicize and place on the record the states' determination of the outcome of their electoral appointment process (Section 3)

(4)   Minimize congressional involvement in resolving controversies over elector appointment not authoritatively resolved by the states (Section 4);

(5)   Settle procedural issues for conducting the joint session at which Congress counts the states' electoral votes (Sections 4-7).[2]

The sponsors of the Electoral Count Act hoped that "if the disputes touching the Constitution of the Electoral Colleges in the States could be disposed of in advance of their action, the counting of the electoral votes at the seat of government…would usually be a little more than a formal ceremony."[3] Section 5 of the Act provides that the "State's selection of electors "shall be conclusive, and shall govern in the counting of the electoral votes" if the procedural rules have been followed. *Bush v. Gore*, 531 U.S. 98,

---

[2] Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56FLLR 541, 578 (2004)

[3] Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004) (quoting Senator George Edmunds in H.R. Misc. Doc. No. 44-13, supra note 31, at18).

113 (2000) (Rehnquist, J., concurrence). Thus, the Act's legislative history suggests that the Electoral Count is intended to be a "ceremonial" finalization of the votes that have already been certified by the states to ensure that certain requirements have been met before the votes are finalized recorded. So while Congress is in session on January 6, it is not the "proceeding before Congress" for purposes of §18 U.S.C. 1512(c) and 1515(b).

The basis of count one of the Indictment is that Mr. Robertson intended to "impede or influence" Congress's certification of the Electoral College vote on the basis that the "ceremonial" certification is an "official proceeding." As outlined by the congressional intent of 18 U.S.C. §1512(c) and the legislative history and purpose of the Electoral Act of 1887, "obstruction of an official proceeding before Congress" was never intended to apply to an event that involves no witness testimony, documentary or tangible evidence, or meaningful adjudication. Of course, most-if not all-of congressional hearings involve witness testimony and documentary evidence and allow Congress to exercise their investigatory power. Section1512(c) is designed to protect the integrity of witness testimony and evidence at those proceedings. See generally *United States v. Poindexter*, 951 F.2d 369, 382 (D.C. Cir. 1991) (discussing how the Victim and Witness Protection Act of 1982 created a new provision, §1512, which prohibits various forms of witness tampering). Moreover, counting the electoral college votes is not an adjudicative proceeding. Congress was tasked with merely ensuring that the requirements for certification have been followed after the states have already determined that the votes were lawfully certified.

The administrative and ceremonial proceeding was not the target of §1512(c). The government cannot conveniently group the unique tradition of the Electoral Count with every other Congressional hearing as they are completely different and possess different functions and characteristics. The government also cannot ignore years of precedent and legislative history where the clear purpose of 18 U.S.C. §1512(c)(2) is to protect the integrity of hearings where there is a potential for destruction of documents and witness tampering.

Furthermore, the Court in *Ermoian v. United States* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in Section 1512(c) and defined in Section 1515. See Ermoian, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512."). Although that case considered whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of the statute, the Court noted, "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding'" and further noted, "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." Id. at 1169.

III.  **Even if the Court determines that the Electoral Count is an "Official Proceeding," 18 U.S.C. §1512(C)(2) is Unconstitutionally Vague and is Vague as Applied to this case**

Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. §1512(c)(2) violates due process as it is vague and does not provide fair notice to Mr. Robertson as to the conduct it punishes. The statute provides that:

"Whoever corruptly –

1. Alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

2. Otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so…shall be fine….or imprisoned…

18 U.S.C. §1512(c)(1)(2)(emphasis added). First, §1512(c) uses words throughout both sections that require courts to speculate about their meaning in the context of the defendant's particular actions. Courts must speculate as to the meaning of the word "corruptly" acted and the phrase "official proceeding." Even more problematic is that subsection (c)(2) is a "residual clause," one that is ambiguous and that requires Courts to determine exactly what line must be drawn to determine if a defendant is otherwise obstructing, impeding, or influencing an official proceeding before Congress.

The Court in *Johnson* explained that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 576 U.S. at 597. There, the Court found a due process violation where the residual clause enhanced a defendant's sentence in the Armed Career Criminal Act if the prior felony "involved conduct that presented a serious potential risk of physical injury to another." *Johnson*, 576 U.S. 591. The residual clause violated due process because it required speculation in each case as to what could potentially cause injury in each set of circumstances. Id. at 598. The ambiguity caused a wide range of interpretation and disparity among courts over nine years, and the Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." Id.

Similarly, the discussion above regarding what constitutes an "official proceeding" illustrates just part of the confusion and lack of cohesiveness among jurisdictions regarding what qualifies as an "official proceeding" and what does not. There has not been any established standard to apply across all cases. The courts have had to speculate and attempt to draw a line to distinguish "official proceedings" from just mere ancillary proceedings or investigations. As discussed above, courts have generally interpreted "official proceeding" to mean something more than an investigation and something more formal; however, there has been no established standard. This has left ambiguity among the courts. See *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006); *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019); *United States v. McDaniel*, 2014 WL 2084891 (N.D. Georgia 2014).

The vagueness of the statute is not limited to the confusion surrounding what constitutes an "official proceeding." The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. §1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations. The Court held that "in the absence of some narrowing gloss, people must guess at its meaning and application." *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991). Previously, in *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the Court held a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in "an almost boundless area for the individual assessment of another's behavior." *Poindexter*, 951 F.2d. at 399 (quoting

Ricks, 414 F.2d at 1097. The Court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. Id. After an assessment of the legislative history and judicial interpretation, the Court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires and found the term vague as applied to the defendant making false statements. Id. at 406.

Following Poindexter, Congress amended §1515 to define "corruptly" for purposes of §1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." §1515(b). However, this amendment did not resolve the vagueness in §1512 as Congress did not amend §1515 as it applies to §1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case, the defendant influenced a witness, which fit squarely within the non-vague category that Poindexter established. *United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In Morrison, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." Id. The Court in Poindexter explained that influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term "corruptly" appears and avoid the vagueness inherent in words like "immorally." Poindexter, 951 F.2d at 379. However, Morrison was not faced with the question of what "corruptly" means in the context of Section 1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the

Page 10 of 15

statute. Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

Analyzing the government's approach to charging defendants with a violation of §1512(c)(2), arising out of events on January 6, 2021, illustrates how vague and arbitrary the enforcement of this statute can be. It appears as though the government has been inconsistent in its charging decisions. It has attempted to draw some bright-line rules by charging individuals with a violation of §1512(c)(2) if defendants entered the Senate floor.[4] However, when taking a look at some of the defendants that have been charged with a violation of §1512(c)(2), the inconsistencies become clear.[5]

(1) *United States v. Isaac Sturgeon*, 21-CR-91: Defendant alleged to have assisted in pushing a barricade outside the Capitol building but never entered the Senate chamber, never went inside the Capitol building, and never made any threats to law enforcement or statements on social media suggesting he wished to disrupt the vote. Mr. Sturgeon is also not alleged to be a part of the Oath Keepers or the Proud Boys.

(2) *United States v. Kenneth Grayson*, 21-CR-224: Defendant alleged to have entered Capitol building, but not alleged to have entered the Senate chamber. Prior to January 6, 2021, he allegedly wrote in a private message, "I am there for the greatest celebration of all time after Pence leads the Senate flip! OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!

---

[4] See United States v. Paul Hodgkins, 1:21-CR-188 (RDM); United States v. Tommy Allan, 1:21-CR-064 (CKK); United States v. Jacob Chansley, 1:21-CR-003 (RCL); United States v. Bradley Bennett, 1:21- CR-312 (JEB); United States v. Leo Brent Bozell IV, 1:21-cr-216 (JDB) (not alleged to be a member of the Proud Boys or the Oath Keepers).
[5] These are just a few cases out of hundreds that share the same inconsistencies.

(3) *United States v. Benjamin Larocca*, 21-CR-317: Defendant allegedly entered Capitol building while screaming "Our House!" Was with an individual who allegedly was yelling, "You fucking oath breakers!" Mr. Larocca is not alleged to have entered the Senate floor and is not a member of the Proud Boys or Oath Keepers.

(4) *United States v. Sean Michael McHugh*, 21-CR-436: Defendant allegedly employed bear spray in direction of officers and yelled insults at officers. Also allegedly used a megaphone and engaged crowd with chants, such as "our house!" No evidence he entered the Capitol building or the Senate floor.

(5) *United States v. Dale Jeremiah Shalvey*, 21-CR-334: Defendant allegedly entered the Senate Chamber and is captured on video rummaging through Senator Cruz's notes.

As illustrated by these cases, the facts and circumstances of each case vary drastically from each other and make it clear that the government's charging decisions are inconsistent. Some cases alleged entry into the Capitol building, while others did not. More importantly, the government does not specify what "influence" these defendants had or how exactly they "impeded." The inconsistent charging decisions, along with the inherently vague words in the statute, as well as the "residual clause" that is the basis for charging these defendants, all show that 18 U.S.C. §1512(c)(2) is unconstitutionally vague and does not provide fair notice to Mr. Robertson.

Lastly, the statute is especially vague as applied to Mr. Robertson's case. The government's theory appears to be that Mr. Robertson's subsequent statements, presence in the Capitol building long after Congress was already evacuated, and post-January 6, 2021 statements support a finding that Mr. Robertson "corruptly" "obstructed, impeded, or influenced," the Electoral Count. Based on this, Mr.Robertson could not

have possibly been on notice that he was committing a felony obstruction of an official proceeding. Mr.Robertson's words were an expression of his First Amendment rights, and there was no criminal intent to do anything more than express his anger regarding the election. Mr. Robertson did not do anything actually to obstruct, influence, or impede Congress. The circumstances of his case mirror those of many defendants on that day whose mere presence and words did not place them on notice that they would be committing a felony involving criminal intent to actually "obstruct" or "impede" or "influence" an "official proceeding."

The Supreme Court made it clear that "fighting words" are a very narrow exception to the First Amendment and must "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 753 (1942). Defendants like Robertson were not inciting violence by expressing how they felt about the election and by assembling to express those opinions.

Mr. Robertson's subsequent social media remarks were not addressed to any individual and were not actual threats, and the First Amendment should protect his words. The government may argue that the collective presence of individuals chanting together is part of the "obstructive" behavior. However, the First Amendment prohibits placing liability on one for their association with another person. See *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 887 (1982). Defendants who were merely in the presence of others who took action to obstruct cannot be held responsible for their words unless there is some direct incitement of those individuals to commit violence. That is not the case here. Mr. Robertson, and many other defendants, had no direct

bearing on what others in various parts of the crowd on January 6 were doing. The obstruction statute should not apply so broadly as to encompass individuals who did not have the "mens rea" to commit a crime or even notice that their presence or words could be construed as criminal.

Obstruction statutes have been deemed unconstitutional for infringing on protected expression. *City of Houston v. Hill*, 482 U.S. 451 (1987).7 In the City of Houston, the Supreme Court dealt with the question of whether a municipal ordinance prohibiting interrupting police officers in the performance of their duties was overbroad and unconstitutional. Id. The Supreme Court held that the enforceable part of the ordinance did not deal with criminal conduct but speech. Id. at 460. In its decision, the Court acknowledged that "speech is often provocative and challenging…[But it] nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. Id. (citing *Terminello v. Chicago*, 337 U.S. 1, 4 (1949). For that reason, the Court invalidated the ordinance as vague and unconstitutional. Id. Similarly, the opinions allegedly expressed by Mr. Robertson were just speech, and no matter how unpopular, they cannot be considered "criminal conduct" punishable by the government.

WHEREFORE, the Defense respectfully requests that this Court dismiss Count One of the Indictment.

Respectfully submitted,

Rollins and Chan Law Firm

/s/
DC Bar No. 453638
By: */s/ Mark M. Rollins*
Mark Rollins
419 7th Street, NW Suite 405
Washington, DC 20004
Phone: (202) 455-5610
Mark@rollinsandchan.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion to Dismiss Count One of the Indictment was filed electronically pursuant to the Rules of the Court and Emailed to:

Bernard F. Crane     berncr@aol.com

Elizabeth Ann Aloi     elizabeth.aloi@usdoj.gov,

Risa Berkower     risa.berkower@usdoj.gov

/s/
_____
Mark Rollins